**UNITED STATES, Appellee,**

v.

**Lawrence A. HERSHEY, Jr.,
Staff Sergeant U.S. Army,
Appellant.**

No. 49,457.
CM 443208.

U.S. Court of Military Appeals.

Oct. 7, 1985.

434

For Appellant: *Lieutenant Colonel Paul J. Luedtke* (argued); *Colonel William G. Eckhardt* and *Captain Frank J. DiGiammarino* (on brief); *Lieutenant Colonel Arthur L. Hunt* and *Major Robert M. Ott.*

For Appellee: *First Lieutenant Tarek Sawi* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Patrick M. Flachs* (on brief); *Captain Paul E. Jordan.*

### Opinion of the Court

COX, Judge:

Contrary to his pleas at a general court-martial, appellant was convicted by a military judge sitting alone of attempted sodomy; carnal knowledge; and lewd and lascivious acts, all involving his minor daughter, in violation of Articles 80, 120, and 134, Uniform Code of Military Justice, 10 U.S.C §§ 880, 920, and 934, respectively. His sentence to confinement for 5 years, forfeiture of all pay and allowances, reduction to E–1, and a bad-conduct discharge was approved by the convening authority and affirmed by the Court of Military Review. 17 M.J. 973 (1984).

We granted review of the following issue:

WHETHER, OVER HIS OBJECTION, APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A PUBLIC TRIAL.

While the procedures employed in this trial are unworthy of emulation, we conclude that the partial closure of the trial under the circumstances of this case did not deprive appellant of a public trial.

This two-day trial commenced at 0915 hours, September 2, 1982, at Fort Polk, Louisiana. After approximately two hours spent on preliminary matters and a motion

to suppress appellant's pretrial confession, trial proceeded on the merits. Trial counsel commented in his opening statement that the complaining witness, appellant's 13–year-old daughter, would "be somewhat timid or a little bit uncomfortable" when testifying to the sexual abuse inflicted upon her by her father. Defense counsel also described the witness as "timid," "reserved" and "difficult to interview," but attributed these characteristics to her lack of credibility.

After both counsel completed their opening statements, trial counsel requested that the courtroom be closed during the testimony of his first witness:

TC: Your Honor, we would like to call our first witness, Miss [DH]. And at this time, Your Honor, we note that there's only two spectators in the courtroom, one being the bailiff and the other being Staff Sergeant Raskin, but that they both be removed and the bailiff asked to stand outside the door during the time she is here to testify.

MJ: Defense.

DC: Well—object, Your Honor. There's —there are purposes for the bailiff and the escort and they're sitting in the rear of the room. There's no need for such a move.

MJ: What is your purpose in requesting it?

TC: Your Honor, our purpose is simply to create an environment which is probably more conducive to the relaxation of Miss [DH], believing that it will be—her testimony will be easier to give once we reduce the number of individuals listening. And we would like to limit that to the military judge, the court reporter, and the members of the trial defense counsel and the accused and Miss [H]'s social worker.

MJ: Is it your position that she's going to be reluctant to testify with spectators?

TC: Your Honor, it's our position that this is—what she's about to do is an embarrassing situation for her and would be for any female to have to testify to some of the things that she's about to testify to. And the government submits that we would like to reduce, as much as possible, that embarrassment.

MJ: Do you have anything further?

DC: Well only that she has told this story repetitively, Your Honor, in front of adults and I see—this is not·substantially different.

MJ: Okay. I'm going to grant the government's request and order the bailiff and the escort out of the courtroom. And if you would ensure that no one enters until Miss [H] leaves the courtroom.

The bailiff and appellant's escort departed the courtroom and DH entered, apparently accompanied by her social worker. Her testimony lasted less than an hour.

The Court of Military Review held that the closure of the court during the witness' testimony "was not an abuse of discretion" in view of the age of the witness, the nature of the charges, the lack of a jury, and the relationship between the witness and appellant. The court concluded that the military "judge properly balanced the right of the appellant to a public trial against the right of the ... witness to be spared undue embarrassment." 17 M.J. at 974. There is little support in the record for the court's *post hoc* assertions, however, as no evidence was presented on the motion and the military judge made no findings. Thus, we are left to speculate why trial counsel's request ·was granted, particularly in view of the fact that only two persons were present to exclude from the courtroom.

 Without question, the. sixth-amendment[1] right to a public trial is applicable to courts-martial. *United States v. Grunden*, 2 M.J. 116 (C.M.A.1977); *United*

---

1. The sixth amendment provides: "In all criminal prosecutions, the accused shall enjoy the

right to a speedy and public trial ... "

*States v. Brown*, 7 U.S.C.M.A 251, 22 C.M.R. 41 (1956). A public trial is believed to effect a fair result by ensuring that all parties perform their functions more responsibly, encouraging witnesses to come forward, and discouraging perjury. *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). Although the right to a public trial is not absolute and the trial judge has authority to close limited portions of a trial over defense objection, closure of the court must be done "sparingly with the emphasis always toward a public trial."[2] *United States v. Grunden, supra* at 120. This Court held in *Grunden* that, even when the interest sought to be protected is national security, the Government must *demonstrate* a compelling need to exclude the public from a court-martial over defense objection, and the mere utterance by trial counsel of a conclusion is not sufficient.

■ In addition to the sixth-amendment right of an accused to a public trial, the Supreme Court has held that the press and general public have a constitutional right under the first amendment to access to criminal trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In *Waller v. Georgia, supra,* the Supreme Court applied the same test to a defendant's objection to closure of a suppression hearing as had been applied in first-amendment cases, stating "that the explicit [s]ixth [a]mendment right of the accused is no less protective of a public trial than the implicit [f]irst [a]mendment right of the press and public." 104 S.Ct. at 2215. The stringent test to be met before closure of a criminal trial to the public is set out in *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), to wit: the

party seeking closure must advance an overriding interest that is likely to be prejudiced; the closure must be narrowly tailored to protect that interest; the trial court must consider reasonable alternatives to closure; and it must make adequate findings supporting the closure to aid in review.

■ Here, that test was not met.[3] The same procedure condemned in *Grunden* was employed, as trial counsel merely stated his position, and the military judge acquiesced in his request. No evidentiary hearing was held to determine, for example, whether this particular witness was unduly embarrassed; whether she was unable to testify coherently with the court open; whether there were any alternatives to closure; or even whether the witness desired closure.

■ In spite of the dearth of information available to aid in review, the Government argues that it was unnecessary to place more on the record because the reason for closure is self-evident and valid—that is, to protect the victim from potential embarrassment. While it may be permissible under certain circumstances to exclude spectators during the testimony of a victim of tender years, that must be decided on a case-by-case basis and not based on the mere utterance of the word "embarrassment" as was done here. As this Court stated almost 30 years ago, "Undeniably there is a certain amount of mortification imposed on victim-witnesses in sex cases, but that is a condition which cannot be eliminated from our judicial system." *Brown v. United States, supra* 7 U.S.C.M.A. at 259, 22 C.M.R. at 49. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609, 102 S.Ct. 2613, 2621, 73 L.Ed.2d 248 (1982) (determination must be made "on a case-by-case basis whether"

---

**2.** Like paragraph 53*e* of the Manual for Courts-Martial, United States, 1969 (Revised edition), R.C.M. 806 of the Manual for Courts-Martial, United States, 1984, sets forth the principle that court-martial proceedings will "be open to the public" except under very limited circumstances.

**3.** Of course, the military judge did not have the benefit of the Supreme Court decisions in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) and *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), at the time of trial.

closure in a sex case is necessary to protect the welfare of a minor victim). "Among the factors to be weighed" in determining whether closure is necessary are the age of the witness, "psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." *Id.* at 608, 102 S.Ct. at 2621 (footnote omitted).

The Government argues that even if the military judge erred in closing the court-martial without determining the necessity for such a measure, appellant waived the issue by failing to more fully articulate the basis of his objection. Although an accused may waive the right to a public trial, *Singer v. United States,* 380 U.S. 24, 34–35, 85 S.Ct. 783, 789–790, 13 L.Ed.2d 630 (1965), we refuse to apply the doctrine of waiver in this case. Appellant did specifically object to closure of the court. Because a constitutional right was involved, any waiver must be "intentional and knowing." *Martineau v. Perry,* 601 F.2d 1196, 1200 (1st Cir.1979); *see Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

Once denial of the constitutional right to a public trial has been established, appellant is not required to prove specific prejudice in order to obtain relief. *Waller v. Georgia, supra.*[4] We do not believe, however, that appellant was denied a public trial in this case. Even though the military judge erred in closing the court without careful inquiry into whether it was

necessary, that does not establish that denial of a public trial has occurred. That determination must be based on the particular facts of the case. *Douglas v. Wainwright,* 739 F.2d 531 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985); *Aaron v. Capps,* 507 F.2d 685 (5th Cir.), *cert. denied,* 423 U.S. 878, 96 S.Ct. 153, 46 L.Ed.2d 112 (1975).

This case involved only a partial closure, rather than a blanket closure, of the entire hearing, as was the case in *Waller.* The press and public were specifically excluded for the full seven days of a suppression hearing in *Waller* even though only a small portion (2½ hours) involved matter that the prosecution had an interest in protecting. Here, the closure was limited to less than an hour and to the testimony of one witness, albeit the chief witness for the prosecution. More importantly, it appears that the only person present in the courtroom other than the accused and court personnel when trial counsel made his exclusionary motion was appellant's escort. The two people asked to leave the courtroom, then, were not there as spectators, but to perform a governmental function. Therefore, the practical impact of the closure was minimal.

Although trial had been in progress for approximately two hours at the time of the ordered closure, no friends, relatives, members of the press, or members of the general public were present in the courtroom.[5]

---

4. *See State v. Sheppard,* 182 Conn. 412, 418, 438 A.2d 125, 128 (1980) ("prejudice must ... be implied" because of "practical impossibility" of demonstrating prejudice); *United States v. Hernandez,* 608 F.2d 741, 747 (9th Cir.1979) (requiring a showing of prejudice because of exclusion would destroy the safeguard); *Martineau v. Perrin,* 601 F.2d 1196, 1198 (1st Cir.1979) (question of prejudice immaterial when "conviction not had in public proceedings"); *People v. Jones,* 47 N.Y.2d 409, 416, 418 N.Y.S.2d 359, 364, 391 N.E.2d 1335, 1340 (1979) (harmless error rule cannot be applied to "intangible, societal loss that flows from" closure of the court); *United States v. Eisner,* 533 F.2d 987, 993 (6th Cir.), *cert. denied,* 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976)("affirmative showing" of harm "is unnecessary to justify reversal" when defendant denied public trial); *United States ex rel. Bennett v. Rundle,* 419 F.2d 599, 608 (3d Cir.1969) (requiring proof of prejudice would force accused "to prove what the disregard of his constitutional right has made it impossible for him to learn"); *United States v. Kobli,* 172 F.2d 919, 921 (3d Cir.1949) (public-trial guarantee illusory if actual prejudice required, as in most cases "it would be difficult if not impossible ... to point to any definite, personal injury"); *Davis v. United States,* 247 Fed. 394, 398–99 (8th Cir.1917) (prejudice implied when constitutional right to public trial is violated).

5. The social worker apparently entered with the witness and remained during her testimony. Appellant's wife testified as a defense witness on the merits and likely would not have been permitted in the courtroom except when testifying. *See* para. 53*f,* 1969 *Manual, supra.*

The public-trial guarantee only provides that the public be allowed to attend, not that the public actually be in attendance. There is no evidence that members of the public were actually barred entry during the short period when the bailiff was asked to prohibit spectators from entering the courtroom. Appellant did not indicate that he was expecting anyone to attend, and we are unwilling to presume that members of the general public desiring entry suddenly appeared at the courtroom door during the brief portion of this two-day trial when entry would have been barred.[6] Under the unique circumstances of this case, it can be determined from the record that appellant received the safeguards of a public trial in spite of the exclusion over his objection of two persons performing official functions during the testimony of a witness. Thus, we find no constitutional violation, and the granted issue must be decided adversely to appellant.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge FLETCHER did not participate.

---

6. It was stated in oral argument that it is the practice in some military courts to bar admittance of spectators except during a recess. Employment of such a procedure is a denial of public access to courts-martial and should be discontinued.