**UNITED STATES, Appellee,**

v.

**Specialist Lukesha Y. ANDERSON, United States Army, Appellant.**

**ARMY 9600168.**

U.S. Army Court of Criminal Appeals.

21 April 1997.

---

For Appellant: Captain John M. Head, JA (on brief).

For Appellee: Lieutenant Colonel Eva M. Novak, JA.

Before GRAVELLE, JOHNSTON, and ECKER, Appellate Military Judges.

### MEMORANDUM OPINION

PER CURIAM: *

Pursuant to her pleas, the appellant was convicted by a military judge sitting as a general court-martial of attempted larceny (three specifications), larceny, and forgery (three specifications) in violation of Articles 80, 121, and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 921, and 923 (1988) [hereinafter UCMJ]. Contrary to her pleas, she also was convicted of larceny, forgery (three specifications), and falsely obtaining services (two specifications) in violation of Articles 121, 123, and 134, UCMJ, 10 U.S.C. 921, 923, and 934. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for thirty months, forfeiture of all pay and allowances, and reduction to Private E1.

Although the appellant has submitted the case to this court on its merits, two matters raised in the record deserve comment.

■ During the providence inquiry into appellant's guilty plea, the military judge made continual references to several stipulations of expected testimony. Appellant never agreed that the matters contained in the stipulations were true *in fact*, merely that the witness would have testified consistently with the stipulation had they been witnesses

in court. As such, the contents of the stipulations of expected testimony do not represent factual matters properly before the court in support of the pleas of guilty. *See United States v. Thomas,* 45 M.J. 661, 663 n. 2 (Army Ct.Crim.App.1997). We note, however, that appellant's pleas were adequately supported elsewhere in the colloquy with the military judge.

■ We also note that the military judge closed the court-martial proceedings to spectators during a portion of the providence inquiry and during the testimony of one witness. Although the reasons for doing so were discussed in an out-of-court session pursuant to Rule for Courts–Martial 802, the military judge placed no justification on the record for her actions. Consequently, she abused her discretion in closing the court-martial.

■ Absent national security concerns or other adequate justification clearly set forth on the record, trials in the United States military justice system are to be open to the public. *See United States v. Travers,* 25 M.J. 61 (C.M.A.1987); *United States v. Hood,* ARMY 9401841 (Army Ct.Crim.App. 20 Feb. 1996) (unpub.), *pet. denied,* 45 M.J. 15 (1996) (Appendix).

■ In this case the military judge apparently closed the proceedings because some of the colloquy with the judge and the testimony of a witness might be embarrassing to the appellant. One aspect of the nature of an open trial forum is to ensure that testimony is subjected to public scrutiny and is thus more likely to be truthful or to be exposed as fraudulent. Mere embarrassment to the appellant was not an adequate basis for closing the court, particularly when the supposedly "sensitive" situation was offered in mitigation. Nevertheless, we find no prejudice to the appellant in the military judge's decision.

The issues raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982) are without merit.

* Senior Judge Gravelle took final action prior to his retirement.

The findings of guilty and the sentence are affirmed.

## APPENDIX

## UNITED STATES ARMY COURT OF CRIMINAL APPEALS

UNITED STATES, Appellee v. Sergeant TERRELL D. HOOD, 381–78–0233, United States Army, Appellant

ARMY 9401841

101st Airborne Division (Air Assault) and Fort Campbell K.H. Clevenger, Military Judge

For Appellant: Colonel Stephen D. Smith, JA; Captain Eric S. Krauss, JA (on brief).

For Appellee: Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Major Anthony P. Nicastro, JA (on brief).

20 February 1996

## MEMORANDUM OPINION

JOHNSTON, Judge:

Consistent with his pleas, the appellant was convicted by a military judge sitting as a general court-martial of failure to obey a lawful general regulation, larceny, wrongful appropriation, and sale of military property in violation of Articles 92, 108, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 908, and 921 (1988) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for two years, forfeiture of $250.00 pay per month for twenty-four months, and reduction to Private E1. Pursuant to a pretrial agreement and exercising his clemency powers, the convening authority reduced the confinement to sixteen months and otherwise approved the adjudged sentence.

Although we find that the matters raised personally by the appellant and through appellate counsel lack merit, there is one aspect of this case that deserves discussion—namely, the exclusion of the public from the court-martial proceedings. This issue concerns the constitutional protection for the right of access by the press and public to court-martial proceedings under the First Amendment rather than the public trial provisions of the Sixth. Although we have determined that the military judge abused his discretion in closing the proceedings, the appellant suffered no prejudice and thus is entitled to no relief.

The appellant, a noncommissioned officer who graduated on the Commandant's List from the Primary Leadership Development Course was a squad leader in the ammunition section of the support platoon for his unit. While home on leave in a rough neighborhood in Flint, Michigan, in the summer of 1993, a boyhood friend asked him to obtain a fragmentation grenade for unspecified uses. At a live fire exercise at Fort Campbell, Kentucky, in the fall of 1993, the appellant was ordered to retrieve unexpended M–67 fragmentation grenades for safeguarding in the field Ammunition Storage Point.[1] Although he properly insured the storage of thirty grenades, the appellant concealed one M–67 grenade on his person, removed it from the field site and buried it in a secretly marked location. The appellant also came into possession of military blasting fuse igniters, time blasting fuses, detonating cord, and blast simulators.

The appellant stored the blasting materials in his quarters rather than turning them in to proper authorities. He later retrieved the fragmentation grenade, transported it to Michigan, filed off any markings that would permit it to be traced, and sold it to his friend for $100.00. He knew at the time that his friend was likely to resell the grenade. Only the timely intervention of the Bureau of Alcohol, Tobacco, and Firearms and the seizure of the grenade and explosives prevented a possible tragedy.

---

1. The stipulation of fact in this case describes an M–67 fragmentation grenade as an explosive device about the size and shape of a baseball that is used in combat to kill enemy soldiers and to damage or destroy enemy equipment. The grenade can be thrown over fifty meters where it will detonate in four or five seconds, wreaking destruction by projecting thousands of fragments in a thirty-meter radius.

At a conference held after arraignment, the appellant requested that his trial be closed to the public. In a pretrial session, he supported the request with Appellate Exhibit III, entitled Motion for Closed Trial. The Motion included an attachment from the Assistant United States Attorney for the Eastern District of Michigan requesting that the appellant be placed on leave to assist federal authorities in ongoing investigations. The exhibit did not explain what appellant's duties would be or whether he would be in any danger. The military judge resolved the issue as follows:

> MJ: Now, Sergeant Hood, you understand that court-martial proceedings, just like any other trial proceeding, is a public proceeding, and the members of the public are entitled to be here. And, if you wanted them here, I would change all of this around immediately and say that anybody could come in and observe these proceedings who wants to do so. But it's—in this instance, I'm going to let it be your call, your election. If you want it to be closed, like we've arranged, or would you prefer that it be a freely open trial?
>
> ACC: Closed, sir.
>
> MJ: All right. You've got no objection to that, trial counsel?
>
> TC: No, sir.

Thereafter, only court personnel, witnesses, and two soldiers on an access list were permitted to enter the courtroom until after adjournment of the court-martial.

There can be no doubt that the general public has a qualified constitutional right under the First Amendment to have access to criminal trials. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). This right to public access to criminal trials extends to courts-martial. *United States v. Hershey,* 20 M.J. 433 (C.M.A.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986); *United States v. Grunden,* 2 M.J. 116 (C.M.A.1977). Indeed, as Judge Cox has noted, public access to courts-martial is critical: "we believe that public confidence in matters of military justice would quickly erode if courts-martial were arbitrarily closed to the public." *United States v. Travers,* 25 M.J. 61, 62 (C.M.A. 1987).[2] Rule for Courts–Martial 806(a) states that, "[e]xcept as otherwise provided in this rule, courts-martial shall be open to the public."[3] Public scrutiny of the courts-martial "reduces the chance of arbitrary or capricious decisions and enhances public confidence in the court-martial process." R.C.M. 806(b) discussion.

In spite of the First Amendment-based constitutional right of the press and the public to have access to a criminal trial, the court-martial may be closed to the public provided the following "stringent test" is met: the party seeking closure must advance an overriding interest that is likely to be prejudiced; the closure must be narrowly tailored to protect that interest;[4] the trial

---

**2.** As the Supreme Court has noted:
> The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."

*Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984) (citing *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 569–571, 100 S.Ct. 2814, 2823–2824, 65 L.Ed.2d 973 (1980)).

**3.** The value of public proceedings has been long recognized. Jeremy Bentham, a noted early legal commentator, regarded public justice as the keystone:

> Without publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account. Recordation, appeal, whatever other institutions might present themselves in the character of checks, would be found to operate rather as cloaks than checks; as cloaks in reality, as checks only in appearance.

1 J. Bentham, Rationale of Judicial Evidence 524 (1827).

**4.** Prior to issuing a closure order, the trial court should be obligated to show that the order "constitutes *the least restrictive means available* for protecting" the overriding interest. *Press–Enterprise Co.,* 464 U.S. at 520, 104 S.Ct. at 829 (Marshall, J. concurring) (emphasis added).

court must consider reasonable alternatives to closure; and it must make adequate findings supporting the closure to aid in review. *See Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *Hershey,* 20 M.J. at 436.

In this case the trial defense counsel merely offered the request to place the appellant on leave to assist federal authorities as the reason to close the proceedings. The military judge acquiesced in the request without offering an explanation for his decision. In addition, he failed to narrowly tailor the closure or to consider other alternatives. Thus, we find that the military judge abused his discretion in closing the court-martial without applying the "stringent test" of *Press Enterprise Co.*[5]

The question before us, therefore, is whether the trial results may stand when the press and the public's right to an open court-martial has been abridged. We note that not all members of the public were excluded, only those who were not on the access list. There is no evidence in the record of trial that members of the press or public sought access to the court-martial or were excluded at the time of the closure order by the military judge. We further note that the verbatim record of trial in this case has been and will continue to be available to the press and public for scrutiny in accordance with the Freedom of Information Act.

While these considerations may show that no error of constitutional dimension occurred, they do not in any way minimize the responsibilities of a military judge. Absent extraordinary circumstances set forth clearly on the record, courts-martial of the United States Army are public proceedings "where the people generally—and representatives of the media—have a right to be present, and where their presence historically has been thought to enhance the integrity and quality of what takes place." *Richmond Newspapers, Inc.,* 448 U.S. at 578, 100 S.Ct. at 2828.

The assertions of error, to include those raised personally by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), are without merit. The findings of guilty and the sentence are affirmed.

Senior Judge GRAVELLE and Judge ECKER concur.

---

**5.** We realize that a military judge may be lulled into error by parties who join in a closure request.