UNITED STATES

v.

Matthew S. TERRY, 305 92 7652,
Corporal (E–4), U.S. Marine
Corps.

NMCM 97 01393.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 8 Jan. 1997.

Decided 10 June 1999.

LT Dale O. Harris, JAGC, USNR, Appellate Defense Counsel.

Capt Michael D. Carsten, USMC, Appellate Government Counsel.

Before LEO, Senior Judge, ANDERSON and COOPER, Appellate Military Judges.

LEO, Senior Judge:

The appellant was tried before a general court-martial composed of military members with enlisted representation. Contrary to his pleas, he was convicted of conspiracy to commit rape and indecent assault, conspiracy to obstruct justice, making a false official statement, rape, and indecent assault, in violation of Articles 81, 107, 120, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, 920, and 934 (1994). He was awarded confinement for nine years, total forfeitures, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

We have reviewed the record of trial, the appellant's assignments of error, and the Government's response. Finding merit in the appellant's second assignment of error,[1] we set aside the findings and the sentence. Arts. 59(a) and 66(c), UCMJ.

## I. DENIAL OF SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL

■ The appellant contends that he was denied his Sixth Amendment right to a public trial when, over his objection, the military judge closed the courtroom during the alleged victim's testimony on the merits. We agree.

### A. BACKGROUND

The alleged victim was, at the time of the trial, a 20–year old, active-duty service member. Record at 220. Prior to calling her to testify, the trial counsel moved to have the military judge clear the courtroom of spectators during her testimony. Record at 198. The military judge requested the basis for his motion, and the following colloquy ensued:

TC: For the impact on the victim, sir, during her testimony. It's the [G]overnment's position that the members are the people who need to hear the witness' testimony and then obviously the counsel.

MJ: When you say "impact," what do you mean?

TC: Not that it would make her unable to testify, sir; but it would be a distraction and impact on her with having to recall events of such a personal nature on her and what she can recall and the violations. The [G]overnment doesn't believe it's necessary to air that in front of all of the other persons in the courtroom.

---

1. APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL, WHERE THE MILITARY JUDGE EXCLUDED ALL SPECTATORS FROM THE COURTROOM, OVER DEFENSE OBJECTION, DURING THE TESTIMONY OF THE ALLEGED VICTIM.

MJ: Would the fact that there are people in this courtroom adversely affect her ability to testify in this case in any way?

TC: It wouldn't affect her ability to say one way or the other, but it would affect her ability in her responses and her ability to testify about the impact on it. It wouldn't affect her memory, sir; but it would affect her ability to respond to have all of the witnesses watching her and thinking about it and having them look at her. It would affect her ability to testify; yes, sir.

MJ: Defense, what is your position?

CC: Judge, we object. We're hoping that when she comes in here, there are going to be nine strangers sitting in front of her, 10, 11, 12, or 13; and we don't see what difference a few extra strangers would make. We're worried about the impression it will give the members as well, Judge. If we're going to be deferential to her, it's almost as if we're bolstering her testimony. I'd object on that basis. To clear everybody out to make it look like she's a victim, these people may not have decided that she's a victim yet; and I'm afraid that the appearance of clearing everybody out and treating her like a victim by giving her this extra thing that no other witness has had will send a bad signal to the members. We're adamantly opposed, Judge, on First Amendment grounds as well.

MJ: What First Amendment grounds?

CC: The right to a public trial, Judge. In the Sixth Amendment, too, I think his right to confront and to cross-examine witnesses should be the same for each and every witness. No witness should be—

MJ: It has been, and it will be, counsel, no matter how I rule on this because those people who are sitting in the gallery have nothing to do with this trial at all. It doesn't impose on his Sixth Amendment right.

With regard to the [G]overnment's request, [G]overnment, I will clear the courtroom at that point. Case law states that it's within the sound discretion of the court to do so, especially in a case dealing with matters of a sexual nature or sexual assault if the testimony of a witness would be adversely impacted in any way. I'll give a cautionary instruction to the members, though.

Record at 198–99.

When the victim was actually called, the following event transpired:

TC: Sir, at this time, the [G]overnment would call Seaman [P] to the stand.

MJ: Very well. Clear the gallery please.[2] ... Mr. President and members of the court, I've cleared the gallery in this case so as to allow Seaman Apprentice [P] the opportunity to testify before you without testifying in front of an additional five to ten strangers or so because of the nature of her testimony. It's the firm belief of this court that her testimony may be affected by the presence of others besides the members of the court and the counsel and all parties to this court. Therefore, that is my reasoning in clearing the gallery, to allow her unfettered testimony before you. You should not draw any adverse conclusions from this with regard to the accused or with regard to anyone else. The court is making no statement with regard to the testimony of Seaman Apprentice [P] or its believability or credibility because you and you alone should make that determination.

Record at 220.

### B. STANDARD OF REVIEW

■ The Sixth Amendment right to a public trial applies to courts-martial. *United States v. Short*, 41 M.J. 42, 43 (C.M.A.1994); RULE FOR COURTS-MARTIAL 806, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). A public trial fosters a fair result, by ensuring that all parties perform their functions more responsibly, encouraging witnesses to come forward, and discouraging perjury. *United States v. Hershey*, 20 M.J. 433, 436 (C.M.A.1985) (citations omitted). This right

---

**2.** The gallery was full and included the appellant's wife, his brother, a reporter, and representatives from his unit. *See* Affidavit of Appellant of 25 Sept. 1998; Affidavit of Sgt Michael S. Terry, of 21 Oct. 1998.

is not absolute, however, and sessions of a court-martial may be closed to the public at the discretion of the military judge. *Short,* 41 M.J. at 43. Accordingly, we review the military judge's decision for an abuse of discretion. *United States v. Travers,* 25 M.J. 61, 62 (C.M.A.1987).

## C. DISCUSSION

 Although exclusion of spectators is allowed, it must be used sparingly, with an emphasis on a public trial. *Short,* 41 M.J. at 43; R.C.M. 806(b) (Discussion). When the defense objects to a closed session, "the Government must *demonstrate* a compelling need to exclude the public." *Hershey,* 20 M.J. at 436. A mere assertion by the trial counsel of such a need is not sufficient. *Id.* In other words, "the party seeking closure must advance an overriding interest that is likely to be prejudiced; the closure must be narrowly tailored to protect that interest; the trial court must consider reasonable alternatives to closure; and it must make adequate findings supporting the closure to aid in review." *Id.* (citing *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)). There is long-standing precedent for using such a reasoned balancing test. *See United States v. Grunden,* 2 M.J. 116 (C.M.A.1977).

In *Hershey,* a child sex abuse case, the trial counsel successfully requested that the court be closed during the testimony of the accused's 13–year old daughter. Our superior court noted, disapprovingly, that the "trial counsel merely stated his position, and the military judge acquiesced in his request." *Hershey,* 20 M.J. at 436. "No evidentiary hearing was held to determine, for example, whether this particular witness was unduly embarrassed; whether she was unable to testify coherently with the court open; whether there were any alternatives to closure; or even whether the witness desired closure." *Id.* However, our superior court also noted that the only people present and asked to leave were the appellant's escort and the bailiff, who were there on official duty. "[N]o friends, relatives, members of the press, or members of the general public were present in the courtroom ... [and]

[t]here is no evidence that members of the public were actually barred entry during the short period when the bailiff was asked to prohibit spectators from entering the courtroom." *Id.* at 437–38. Since there was no infringement upon the right of public access to the courtroom, the appellant "received the safeguards of a public trial" despite the closure of the courtroom over his objection. *Id.* at 438.

 In *ABC, Inc. v. Powell,* 47 M.J. 363 (1997), a First Amendment case, our superior court held that protecting the alleged victim's privacy and guarding potential members against the possible taint of outside influences were insufficient reasons to close an Article 32, UCMJ, hearing. The decision reaffirmed the requirement for a case-by-case analysis that balanced concern for the protection of the alleged victim against the accused's constitutional right to a public trial. *Id.* at 365. The decision to close the proceeding must be "reasoned" and not merely "reflexive." *Id.*

In *United States v. Anzalone,* 40 M.J. 658 (N.M.C.M.R.1994), *rev'd on other grounds,* 43 M.J. 322 (1995) and *United States v. Lonetree,* 31 M.J. 849 (N.M.C.M.R.1990), *aff'd and rem'd,* 35 M.J. 396 (C.M.A.1992), both national security cases, this court affirmed the use of the *Hershey* standard. We noted in each case that the Government met its burden under *Hershey* by justifying its request with sworn affidavits and that the military judge appropriately applied the balancing test, limiting the closures only to sessions in which classified information was going to be discussed.

 Accordingly, a Sixth Amendment violation of the right to a public trial arises when the record shows an *actual* barring of members of the public from the courtroom by the military judge without an adequate factual basis to justify the closure. In this case, we have such a showing. The facts in the appellant's trial are very similar to those in *Hershey,* with the exception that the appellant in the case before us did, in fact, have family members and others present who were barred from the courtroom during the testimony of the alleged victim.

In arguing in its brief that the partial closure of the courtroom was justified, the Government essentially made the following points: (1) the military judge placed a colorable reason on the record; (2) the closure of the trial was limited to only 28 pages of the 363–page record; and (3) the military judge gave a cautionary instruction to the members. Government Brief of 4 Dec. 1998. This response is not persuasive in light of *Hershey*.

The military judge's statement about the adverse impact of an open court on the testimony of a sexual assault victim may generally be true, but it was not based on any facts about the specific witness in this case. The trial counsel's somewhat confused and tentative representation in support of his motion regarding Seaman [P]'s ability to testify in open court is not evidence and cannot provide the factual basis for the military judge's decision. *United States v. Lewis*, 42 M.J. 1, 4 (1995).

■ While we did note in *Anzalone* that the closed portion of the trial was limited to 79 pages of the 479–page record of trial,[3] our superior court expressed quite clearly in *Grunden* that "[t]he propriety or impropriety of the exclusion of the public from all or part of a trial cannot, as attempted by the [G]overnment in this case, be reduced to solution by mathematical formulas. The logic and rationale governing the exclusion, not mere percentages of the total pages of the record, must be dispositive." *Grunden*, 2 M.J. at 120 n. 2. In this instance, even though the alleged victim was not the only witness at the court-martial, she was certainly the most critical one for the Government's case. Hence, the closure was not confined to an insignificant part of the trial, but rather centered on the most important part of all.

■ Finally, a cautionary instruction to the members may, indeed, be appropriate if the closure of the courtroom is proper in the first instance. But if the closure violates the accused's right to a public trial, even the best instruction will not cure it. *See Hershey*, 20 M.J. at 437 n. 4.

3. *Anzalone*, 40 M.J. at 666.

In summary, the decision of the military judge to close the court during the testimony of Seaman [P] constituted an abuse of discretion, because there was no evidentiary support for the factual conclusion upon which it was based. *Travers*, 25 M.J. at 63. We, therefore, find that the appellant's Sixth Amendment right to a public trial was violated. "Once denial of the constitutional right to a public trial has been established, the appellant is not required to prove specific prejudice in order to obtain relief." *Hershey*, 20 M.J. at 437.

## II. CONCLUSION

As a result of our holding on the appellant's second assignment of error, the remaining assignments are moot. The findings and the sentence are set aside. The same or a different convening authority may order a rehearing.

Judge ANDERSON and Judge COOPER concur.