SAN ANTONIO EXPRESS–NEWS and
James A. Hutton, Petitioners

v.

Major Dixie MORROW, Article 32 Investigating Officer, and Colonel Klaus Bartels, Special Court–Martial Convening Authority, Brooks AFB, Texas, Respondents.

Major Eric Duncan, Real
Party in Interest.

Misc. Dkt. No. 96–09.

U.S. Air Force Court of Criminal Appeals.

Aug. 9, 1996.

Before HEIMBURG, GAMBOA, and SENANDER, Appellate Military Judges.

## OPINION OF THE COURT

HEIMBURG, Senior Judge:

On July 11, 1996, *The San Antonio Express–News* and James A. Hutton filed this petition for extraordinary relief in the nature of a writ of mandamus. Petitioner invokes the authority of the Court pursuant to the All–Writs Act, 28 U.S.C. § 1651 (1994).

### I—Proceedings to Date

Petitioner requests that the Court issue an order permitting public access to a pretrial investigation of charges at Brooks Air Force Base, Texas. In support of its request, Petitioner avers that, in May 1996, Major Eric Duncan, an Air Force officer, was charged with the August 1990 murder of an 11–year–old girl. Petitioner states that Major Dixie Morrow was appointed to conduct the pretrial investigation of charges pursuant to Article 32, UCMJ, 10 U.S.C. § 832 (1994). Petitioner alleges that Major Morrow began hearings concerning the charges at Brooks Air Force Base, Texas, on July 8, 1996. Petitioner asserts that Major Morrow closed the investigation to the public upon request of the government representative, over the objection of the accused.

Petitioner avers that the charges against Major Duncan concern a highly publicized disappearance and murder, which has aroused a great deal of public interest over the past six years. Citing "a First Amendment right of access to criminal proceedings," Petitioner argues that no compelling interest outweighs the First Amendment rights of public and press access to this Article 32, UCMJ, hearing.

Petitioner seeks relief in an order giving immediate access to the pretrial investigation of charges in the case of the *United States v. Major Eric Duncan,* access to a transcript of the testimony already taken, and copies of the exhibits already received. In the alternative, if the writ were issued after completion of the investigation, Petitioner requests a copy of the transcript of all testimony and a copy of "all exhibits offered and/or received into evidence" by the investigating officer.

On July 11, 1996, the Court issued an order staying the Article 32 investigation and requesting the investigating officer to inform the Court of the facts, her ruling, and its basis. On July 12, 1996, the Court received two affidavits, one sealed, from the investigating officer. The sealed affidavit revealed witnesses and documents which, the investigating officer determined, required protection from disclosure in a public filing with the Court.

In her unsealed affidavit, the investigating officer said that the government representative requested her to close the hearing, pursuant to her authority in R.C.M. 405(h)(3). She said the defense opposed closure, so she heard arguments from both sides, reviewed the law, and deliberated for two hours before ruling. The investigating officer stated she ruled that the hearing would be closed to spectators on the following basis: "a need to protect against the dissemination of information that might not be admissible in court; to prevent against contamination of a potential

jury pool; to maintain a dignified, orderly, and thorough hearing; and to encourage the complete candor of witnesses called to testify at the hearing." Despite the extensive publicity about the case for six years, the investigating officer concluded that fact did not require her to allow spectators. She said she emphasized to counsel for the government and the defense that her ruling closing the proceedings to spectators did not restrict them from disclosing what occurred during the hearing, abrogate the accused's right to verbatim transcripts of the testimony of witnesses, or affect the accused's right to a copy of the detailed report of her investigation. *See* Article 32(b), UCMJ; R.C.M. 405(j)(3).

After reviewing the affidavits of the investigating officer, the Court, on July 12, 1996, dissolved the stay and permitted the Article 32, UCMJ, investigation to proceed. We have not issued a show cause order to the government.

## II—Jurisdiction of the Court

The first question we must address is our jurisdiction to entertain this petition. Counsel for the government, in an unsolicited motion filed with the Court, suggest that the Court lacks jurisdiction over Article 32, UCMJ, investigations. Our jurisdiction, counsel assert, properly should be limited to those cases described in our statutory charter. *See* Articles 66(b), 69(d), UCMJ, 10 U.S.C. §§ 866(b), 869(d) (1994). Even if the Court follows the "liberal" view of *McPhail v. United States,* 1 M.J. 457 (C.M.A.1976), government counsel reason, a pretrial investigation under Article 32, UCMJ, is not a court-martial. No court exists over which this Court may exercise its supervisory authority, the government argues, and there is no authority under the All–Writs Act, because entertaining this petition is not "in aid of" our jurisdiction.

### A. Our Supervisory Jurisdiction

Counsel for the government misunderstand the jurisdiction of this Court in the area of extraordinary relief. For many years, our jurisdiction under the All–Writs Act was an open question, but it is now fairly well settled. In 1978, our Court (then called the Air Force Court of Military Review) said:

We believe that Congress intended the Uniform Code of Military Justice to be unitary and self-contained; that is, it was meant to include all the checks and balances necessary to function as a separate legal system. See Article 76, 10 U.S.C. § 876. Thus, we believe that the Code envisioned supervisory control over each tier of the military justice process.

\*　　\*　　\*　　\*　　\*　　\*　　\*

As the highest Air Force Court, through our reviews we exercise supervisory authority over the actions of Air Force trial judges, and where ... an injustice has been done, we have the inherent power to correct it.

*United States v. Dettinger,* 6 M.J. 505, 511 (A.F.C.M.R.1978). Although the Court of Military Appeals (now the Court of Appeals for the Armed Forces) reversed our grant of extraordinary relief in that case, they did not disagree with our view of our jurisdiction:

The court below remarked that the Court of Military Review of each service is the "highest" tribunal in that service's courts-martial system. An appellate tribunal of that sort, said the court, has judicial authority over the actions of trial judges in cases that may **potentially** reach the appellate court. We agree. Without stopping to define the limits of such independent proceedings, we have no doubt that, as the highest tribunal in each service, a Court of Military Review can "confine an inferior court [within its system] to a lawful exercise of its prescribed jurisdiction." *Roche v. Evaporated Milk Ass'n,* [319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943).] *See also McPhail v. United States,* [1 M.J. 457, 461 (C.M.A.1976)].

*Dettinger v. United States,* 7 M.J. 216, 220 (C.M.A.1979) (emphasis added).

### B. Supervisory Authority and Article 32, UCMJ

■ The question we face is whether the supervisory authority of this Court extends beyond the court-martial itself to pretrial proceedings conducted under Article 32, UCMJ, 10 U.S.C. § 832 (1994). It is a question that, to our knowledge, has not previously been answered.

■ For our answer, we begin by looking at the nature of the Article 32 investigation. "No charge or specification may be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein has been made." Article 32(a), UCMJ, 10 U.S.C. § 832(a) (1994). Thus, the Article 32 investigation is "an integral part of the court-martial proceedings." *United States v. Nichols*, 8 U.S.C.M.A. 119, 23 C.M.R. 343, 348, 1957 WL 4495 (1957) (citation omitted). "[A]n impartial pretrial hearing is a substantial right." *United States v. Parker*, 6 U.S.C.M.A. 75, 19 C.M.R. 201, 207, 1955 WL 3420 (1955).

■ The pretrial investigation of charges under Article 32, UCMJ, although not a court-martial, is a judicial proceeding. *Mac-Donald v. Hodson*, 19 U.S.C.M.A. 582, 42 C.M.R. 184, 185, 1970 WL 7037 (1970); *United States v. Worden*, 17 U.S.C.M.A. 486, 38 C.M.R. 284, 286, 1968 WL 5396 (1968); *Nichols*, 23 C.M.R. at 348. The Article 32 investigating officer has been deemed a "judicial officer." *United States v. Payne*, 3 M.J. 354, 355 (C.M.A.1977). The responsibility of the officer conducting an Article 32 investigation for "fair and orderly administration of justice" has been likened to that of the military judge. *Doherty v. United States*, 20 U.S.C.M.A. 163, 43 C.M.R. 3, 1970 WL 7410 (1970).

■ It is true that a charge investigated under Article 32 may never reach this Court, but that is equally true of any charge tried by court-martial. The exercise of our supervisory authority over the Air Force judicial system extends, at least, to "cases that may potentially reach this Court." *Dettinger v. United States*, 7 M.J. at 220. An Article 32 pretrial investigation into a charge of murder certainly has that potential. *See also Fletcher v. Covington*, 42 M.J. 215 (1995) (stay issued by Court of Appeals for the Armed Forces in nonjudicial proceedings under Article 15, UCMJ, 10 U.S.C. § 815 (1994)); *Unger v. Ziemniak*, 27 M.J. 349 (C.M.A.1989) (Court of Military Appeals entertained petition concerning a special court-martial which could not have adjudged a sentence requiring statutory appellate review).

■ As the Air Force's highest tribunal, we have jurisdiction to supervise "each tier of the military justice process" to ensure that justice is done. *See United States v. Dettinger*, 6 M.J. at 511. Moreover, we believe our Court has a responsibility to ensure that the Air Force system of justice functions fairly, not just in the eyes of all the parties, but also in the eyes of the American public we serve. We believe we have jurisdiction to entertain this petition.

### III—Review of the Decision to Close the Hearing

■ Having concluded that we have jurisdiction to entertain this petition, we must consider whether the circumstances of this case justify the use of such a "drastic instrument." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A.1983). Use of the writ of mandamus is discretionary with the appellate tribunal which considers it. *United States v. Wade*, 15 M.J. 993, 995 (N.M.C.M.R.1983) (quoting *Glidden Co. v. Zdanok*, 370 U.S. 530, 568 n. 33, 82 S.Ct. 1459, 1482 n. 33, 8 L.Ed.2d 671 (1962)). The discretionary nature of the writ makes prior instances of its use of little precedential effect. *Id.* Nevertheless, certain principles are well-recognized.

■ One principle is that issue of the writ of mandamus requires that the decision reviewed be an error more serious than abuse of discretion. When we are asked to grant extraordinary relief from a judicial officer's discretionary decision, we may not reverse that decision by mandamus unless it amounts to "more than even 'gross error'; it must amount 'to a judicial "usurpation of power," ' *United States v. DiStefano*, 464 F.2d 845, 850 (2d Cir.1972)." *Labella*, 15 M.J. at 229. The function of mandamus is "not to control the decision" of the lower judicial officer. *Dettinger v. United States*, 7 M.J. at 224.

### A. Are Article 32 Investigations Public?

■ Before 1984, no Manual for Courts–Martial contained guidance as to whether Article 32 pretrial investigations should be open to the public. Nevertheless, we are

aware of cases publicized in national news media before 1984, including cases of alleged espionage, in which pretrial investigations were open to the public.

In 1984, the President issued the MANUAL FOR COURTS-MARTIAL, UNITED STATES (MCM) (1984), which contains this brief reference to public access: "Access by spectators to all or part of the proceedings may be restricted or foreclosed in the discretion of the commander who directed the investigation or the investigating officer." R.C.M. 405(h)(3). Although the drafters disclaimed any intention to tip the scales in favor of open hearings (see analysis of R.C.M. 405(h)(3) in App. 21, MCM), the nonbinding Discussion after the Rule says, "Ordinarily the proceedings of a pretrial investigation should be open to the public." More important, it seems to us, is the language of R.C.M. 405(h)(3) itself. Because the Rule speaks of *restriction* of access, it obviously favors open hearings. A Rule "neutral" on access would not use the word "restriction," but say that the decision to open or close the proceedings is a matter of indifference. The plain meaning of R.C.M. 405(h)(3) is clear enough that we believe there is no need to resort to legislative history or other secondary sources for interpretation.

We know of only one case which addressed the closing of a pretrial investigation. In a 1970 denial of extraordinary relief, the Court of Military Appeals said that a decision to close such a hearing to the public was "well within the discretionary powers of the investigating officer." *MacDonald*, 42 C.M.R. at 185. In denying Captain MacDonald's petition, the Court said an Article 32 investigation was not a trial in the Sixth Amendment sense, so there was no requirement that it be public. *Id.* We believe this dicta may not represent the view of the Court of Appeals today, considering the changes in the MCM and customary procedures for conducting Article 32 investigations.

We also believe the American public is best served by pretrial investigations that, like courts-martial, are open to public scrutiny. As was said of courts-martial, such scrutiny "is believed to effect a fair result by ensuring that all parties perform their func-

tions more responsibly, encouraging witnesses to come forward, and discouraging perjury." *United States v. Hershey*, 20 M.J. 433, 436 (C.M.A.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986) (citations omitted). We believe the accused, the press, and the public have a recognizable interest in being informed of the workings of our entire court-martial process, and that no public interest is served by a blanket rule closing pretrial hearings.

The fact that we believe Article 32 investigations are presumptively public hearings does not mean that we see clearly *how* R.C.M. 405(h)(3) is to be applied. It contains very little guidance to an investigating officer faced with a decision whether to close a pretrial investigation to the public. A correct decision requires answers to several questions. How strong is the presumption in favor of openness? What kind of showing must be made to justify closure? On whom does the burden fall? May an entire hearing be closed, in "shotgun" manner, or must the Article 32 investigating officer use the "rifle" method, closing only those limited portions of the hearing where other concerns justify it? (*See, e.g.*, R.C.M. 806(b) Discussion).

## B. Is Mandamus Appropriate?

 We conclude that we should not reverse the decision of the Article 32 investigating officer by mandamus. We reach that conclusion on several grounds. The decision whether to close an Article 32 pretrial investigation is a discretionary one. R.C.M. 405(h)(3). The affidavit Major Morrow submitted to this Court convinces us that she exercised discretion: that is, her decision to close the hearing was not a reflexive response, but a reasoned one. Moreover, while we believe Article 32 pretrial investigations are presumptively public, it is not clear how competing interests are to be weighed in deciding whether to close a hearing, or whether the entire hearing may be closed, as was done here. In our view, this is an area of law which is "subject to differing interpretations," and we should not use mandamus in this "developing area of law." *Labella*, 15 M.J. at 229.

## IV—Conclusion

The Petition for Extraordinary Relief in the nature of a writ of mandamus is hereby

DENIED.

Judges GAMBOA and SENANDER concur.