ABC, INC.; Cable News Network, Inc. ("CNN"); CBS Inc.; Fox News Network, L.L.C.; National Broadcasting Company, Inc.; and The Washington Post, Petitioners,

v.

Colonel Owen C. POWELL, Special Court–Martial Convening Authority; Colonel Robert L. Jarvis, Investigating Officer; and the United States Army, Respondents.

Gene C. McKINNEY, Sergeant Major of the Army, Petitioner,

v.

Colonel Robert L. JARVIS, Investigating Officer; Colonel Owen C. Powell, Special Court–Martial Convening Authority; and the United States Army, Respondents.

Misc. Nos. 97–8023, 97–8024.

U.S. Court of Appeals for the Armed Forces.

Argued June 23, 1997.

Decided Nov. 5, 1997.

*Counsel (McKinney)*

For Petitioner: *Charles W. Gittins* (argued).

For Respondents: *Major Fred P. Taylor* (argued); *Lieutenant Colonel Paul E. Jordan* (USAR) and *Captain Theresa A. Gallagher* (on brief).

*Counsel (ABC, Inc.)*

For Petitioners: *Stuart F. Pierson* (argued); *Raymond Ku* (on brief).

For Respondents: *Major Fred P. Taylor* (argued); *Lieutenant Colonel Paul E. Jordan* (USAR) and *Captain Theresa A. Gallagher* (on brief).

For *Amicus Curiae: Eugene R. Fidell* (argued); *David P. Sheldon, Kevin J. Barry, Steven A. Saltzburg, Michael F. Noone, Jr.,* and *Eileen M. Albertson* (on brief)—For National Institute of Military Justice and Judge Advocates Association.

## Opinion of the Court

COX, Chief Judge:

Petitioners sought a Writ of Mandamus requesting that this Court order that the investigation under Article 32, Uniform Code of Military Justice, 10 USC § 832, into the allegations of misconduct[1] made against the Sergeant Major of the Army (SMA), Gene C. McKinney, be opened to the press and public. *See* 28 USC § 1651(a). On June 23, 1997, following oral argument, we granted the Petition for Extraordinary Relief and issued a Writ of Mandamus opening the Article 32 proceedings to the press and public, as requested by Petitioners, with an opinion to follow. 47 MJ 80 (1997).[2] This is that opinion.

This case presented two questions for our consideration: First, whether Petitioners had good cause to seek an exception from this Court's rule requiring that they first file their petition with the Court of Criminal Appeals. *See* Rules 4(b)(1) and 27(a)(1)(E), Rules of Practice and Procedure, United States Court of Appeals for the Armed Forces. Second, whether the Article 32 hearing was properly closed to the public and press.

SMA McKinney's Article 32 hearing was ordered closed by Colonel Owen C. Powell, the special court-martial convening authority (SPCMCA), who appointed the Article 32 investigating officer. Colonel Powell also preferred the charges against SMA McKinney. Colonel Powell gave the following reasons in support of ordering a closed hearing: (1) to maintain the integrity of the military justice system and ensure due process to SMA McKinney; (2) to prevent dissemination of evidence or testimony that would be admissible at an Article 32 investigation, but might not be admissible at trial, in order to prevent contamination of the "potential pool of panel members"; and (3) to protect the alleged victims who would be testifying as witnesses against SMA McKinney, specifically to shield the alleged victims from possible news reports about anticipated attempts to delve into each woman's sexual history.

After receiving the petition for this Court to order the hearing opened, we required the Government to show cause why the hearing should remain closed. The Government submitted no additional information and relied upon the reasons recited above. Additionally, we required Petitioners to show cause why they should not first petition the Court of Criminal Appeals for relief.

Upon consideration of the case and the responses of the Government and Petitioners, we agreed to hear the case without further delay for three reasons: First, public access to Article 32 investigations is a question of common concern to all services under the UCMJ and is not unique to the Army. *See San Antonio Express–News v. Morrow,* 44 MJ 706 (A.F.Ct.Crim.App.1996). Second, in this case the parties to the Article 32 investigation, as well as administrative support personnel and witnesses, were already duly assembled and ready to proceed at the time the Petition for Extraordinary Relief was filed. Third, neither justice nor judicial economy would be served by delaying the Article 32 investigation pending remand to the Court of Criminal Appeals, albeit we would have welcomed the opinion of that court in these proceedings.

---

1. The preferred charges pending investigation at the time of oral argument on this writ were maltreatment of a subordinate (4 specifications), assault (2 specifications), and 12 specifications of various offenses, including adultery, solicitation of adultery, communication of a threat, indecent assault, and obstruction of justice, in violation of Articles 93, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 893, 928, and 934, respectively.

2. Judge Sullivan recused himself without prejudice to participate in any further proceedings, and did not participate in either oral argument or disposition of this case.

The question, therefore, is whether this Article 32 investigation must be generally open or whether it may be closed to the public.

The procedural rule adopted by the President on this issue is found at RCM 405(h)(3), Manual for Courts–Martial, United States (1995 ed.), which states:

> *Access by spectators.* Access by spectators to all or part of the proceeding may be restricted or foreclosed in the discretion of the commander who directed the investigation or the investigating officer.

The Discussion of the Rule provides: "Closure may encourage complete testimony by an embarrassed or timid witness. **Ordinarily the proceedings of a pretrial investigation should be open to spectators.**" (Emphasis added.)

■ Although we have never addressed the direct question whether the Sixth Amendment to the Constitution affords a military accused the right to a public Article 32 hearing, we have consistently held that the Sixth Amendment right does apply to a court-martial. *United States v. Hershey,* 20 MJ 433, 435 (CMA 1985); *United States v. Grunden,* 2 MJ 116, 120 (CMA 1977); *MacDonald v. Hodson,* 19 USCMA 582, 42 CMR 184 (1970); *United States v. Brown,* 7 USCMA 251, 256, 22 CMR 41, 46 (1956). Today we make it clear that, absent "cause shown that outweighs the value of openness," the military accused is likewise entitled to a public Article 32 investigative hearing. *Press–Enterprise Co. v. Superior Court of California, Riverside County,* 464 U.S. 501, 509, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984); *see also Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581, 100 S.Ct. 2814, 2829–30, 65 L.Ed.2d 973 (1980)("Absent an overriding interest articulated in findings, the trial of a criminal case must be open to the public."). Similarly, when an accused is entitled to a public hearing, the press enjoys the same right and has standing to complain if access is denied. *Globe Newspaper Co. v. Superior Court for the County of Norfolk,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Hershey, supra* at 435–36.

■ But the right to a public hearing is not absolute. *United States v. Brown, United States v. Grunden,* and *United States v. Hershey,* all *supra.* Therefore, we decline to adopt the broadcasting companies' expansive position that requiring a witness to testify about personal sexual history "plainly does not qualify" as a basis to close a pretrial hearing or court-martial. Petitioners' Brief at 12. Rather, we have proceeded as did the Supreme Court in *Globe,* which held that the determination must be made on a case-by-case, witness-by-witness, and circumstance-by-circumstance basis whether closure in a case is necessary to protect the welfare of a victim or alleged victim of sexual assault. *Globe, supra* at 609, 102 S.Ct. at 2620; *Hershey, supra* at 436; *see also* Mil.R.Evid. 412, Manual, *supra.* In *Hershey,* we recognized that "[u]ndeniably there is a certain amount of mortification imposed on victim-witnesses in sex cases, but that is a condition which cannot be eliminated from our judicial system." 20 MJ at 436, citing *Brown, supra* at 259, 22 CMR at 49; *see also* Mil.R.Evid. 412.

■ Every case that involves limiting access to the public must be decided on its own merits. Furthermore, the scope of closure must be tailored to achieve the stated purposes and should also be "reasoned," not "reflexive." *See San Antonio Express–News,* 44 MJ at 710; *United States v. Hershey, supra.*

Civilian jurisdictions have similarly protected the right of public access to criminal trials and have required articulated and compelling factors to justify closure. *See, e.g., Globe, supra* at 608–09, 102 S.Ct. at 2620–21 (state's mandatory rule to close access to testimony of minor, sexual-assault victims is unconstitutional because overly broad; case-by-case determination required); *Commonwealth v. Martin,* 417 Mass. 187, 629 N.E.2d 297, 302 (1994)(trial judge required to determine on a case-by-case basis whether closure necessary to prevent psychological harm or trauma to minor witness, considering factors such as age, maturity, desires of complainant, nature of alleged crime, and interests of complainant's parents and relatives); *Austin Daily Herald v. Mork,* 507 N.W.2d 854, 857

(Minn.App.1993)(trial judge's restrictive order on media access to attend testimony by minors affirmed as furthering state's compelling interest to safeguard juvenile records and protect psychological well-being of juvenile witnesses; however, practice not encouraged for future cases); *Renkel v. State,* 807 P.2d 1087, 1093–1094 (Alaska App.1991)(conviction reversed where only evidence supporting closure of trial was letter from youngest child-complainant's therapist and guardian ad litem's statement to court that minor witnesses were under "a great deal of emotional stress"); *United States v. Jacobson,* 785 F.Supp. 563 (E.D.Va.1992)(closure of courtroom for parents' testimony regarding whether their children were fathered by artificial insemination by defendant-doctor's sperm not narrowly tailored to achieve Government's interest).

■ Here, the SPCMCA decided to close the entire proceeding for unsubstantiated reasons. There is every reason to believe that he acted in good faith in closing the proceedings to protect the alleged victims' privacy and guard court members against potential tainting by outside influences. Regardless, we hold that these reasons alone are insufficient. As Chief Judge Fletcher noted in *Grunden,* "In excising the public from the trial, the [convening authority] employed an ax in place of the constitutionally required scalpel." 2 MJ at 120.

It may well have been necessary during these proceedings to limit public access to the investigation for some immediate valid reason; however, when we issued our disposition order, there was no record before us justifying a sweeping closure of the entire proceeding to the public and press. Therefore, we ordered that the Article 32 investigation in this case be opened to the public and press, unless future compelling circumstances dictated a different result.

Judges CRAWFORD, GIERKE, and EFFRON concur.