CENTER FOR CONSTITUTIONAL RIGHTS et al., Appellants

v.

UNITED STATES and COLONEL DENISE LIND, Military Judge, Appellees

No. 12-8027

Crim. App. Misc. No. 20120514

United States Court of Appeals for the Armed Forces

Argued October 10, 2012

Decided April 16, 2013

STUCKY, J., delivered the opinion of the Court, in which ERDMANN and RYAN, JJ., joined. BAKER, C.J., filed a dissenting opinion, in which COX, S.J., joined. COX, S.J., filed a dissenting opinion in which BAKER, C.J., joined.

Counsel

For Appellants: Shayana D. Kadidal, Esq. (argued); J. Wells Dixon, Esq., Baher Azmy, Esq., Michael Ratner, Esq., and Jonathan Hafetz, Esq. (on brief).

For Appellees: Captain Chad M. Fisher (argued); Lieutenant Colonel Amber J. Roach (on brief); Major Robert Rodrigues.

Amicus Curiae for Appellants on Behalf of the Reporters Committee for Freedom of the Press and Thirty-One News Media Organizations: Gregg P. Leslie, Esq., and Kristen Rasmussen, Esq., et al. (on brief).

Military Judge: Denise Lind

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

Appellants[1] appeal the United States Army Court of Criminal Appeals' (CCA) summary denial of their petition for a writ of mandamus and prohibition.  See Center for Constitutional Rights v. United States and Colonel Denise Lind, Misc. No. 20120514 (A. Ct. Crim. App. June 21, 2012).  Appellants summarized their request to this Court, as follows:

> (1) Petitioner-Appellants request a writ of mandamus and prohibition to compel the trial court to grant public access to documents filed in United States v. Manning, including without limitation (a) all papers and pleadings filed by the parties, including particularly the government's motion papers and responses to defense motions, (b) court orders, and (c) transcripts of all proceedings, and that any further restrictions on public access to the proceedings or documents therein only occur following notice to the public of any contemplated restrictions, an opportunity for interested parties to be heard, and case-by-case specific findings of necessity after consideration of less-restrictive alternatives; and

> (2) Petitioner-Appellants request a writ of mandamus and/or prohibition ordering the trial judge to reconstitute past R.C.M. 802 conferences in the Manning case in open court, in a matter not inconsistent with the First Amendment right of public access, and to conduct all future conferences in a matter not inconsistent with the First Amendment right of public access.

---

[1] Center for Constitutional Rights, Glenn Greenwald, Salon.com, Jeremy Scahill, The Nation, Amy Goodman, Democracy Now!, Chase Madar, Kevin Gosztola, Julian Assange, and Wikileaks.

Center for Constitutional Rights et al. v. United States,
No. 12-8027/AR

We hold that this Court is without jurisdiction to grant the requested relief.[2]

## I. Background

Charges were preferred against Private First Class (PFC) Bradley E. Manning [hereinafter the accused], alleging, inter alia that he provided intelligence to the enemy; provided national security information to a person not entitled to receive it; stole, purloined, or knowingly converted to his own use or the use of another certain United States databases, providing intelligence to the enemy, and violated certain lawful general regulations. Articles 92, 109, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 909, 934 (2006).

We denied an earlier writ-appeal submitted by some of the appellants seeking guaranteed access to seats in the gallery of the hearing room for the accused's Article 32, UCMJ, 10 U.S.C. § 832 (2006), investigation and the right to be present for all sessions of the hearing, including those closed to the public. Assange and Wikileaks v. United States and Lieutenant Colonel Paul Almanza, 71 M.J. 100 (C.A.A.F. 2012) (summary disposition). The charges were referred to a general court-martial on February 3, 2012.

---

[2] In light of our jurisdictional holding, we need not reach the granted or other specified issues.

Center for Constitutional Rights et al. v. United States,
No. 12-8027/AR

After oral argument was had on the current writ-appeal, we specified three issues for the parties to brief: (1) whether this Court and the CCA have subject-matter jurisdiction over Appellants' request for extraordinary relief; (2) whether Appellants, as non-parties, have standing to file a request for extraordinary relief in this Court or the CCA; and (3) assuming jurisdiction, which officials are lawfully authorized to direct release of the records and to what extent Appellants must first demonstrate that they requested release from an appropriate release official. We invited counsel for the accused to file a brief on the issues, but they declined to do so.

## II. Arguments of the Parties

Appellants argue that, for issues arising before the findings and sentence of a court-martial, military appellate courts have potential, also known as anticipatory, jurisdiction to entertain petitions for extraordinary relief. To a great extent, they rely on the Supreme Court's potential jurisdiction jurisprudence from Federal Trade Comm'n v. Dean Foods Co., 384 U.S. 597, 603—04 (1966), and this Court's judgment in ABC, Inc. v. Powell, 47 M.J. 363 (C.A.A.F. 1997).

The Government argues that the authority to release the documents "is committed by statute and regulation to the Judge Advocate General (TJAG)," not the military judge, and that this administrative decision is not subject to review by the CCA or

4

this Court.  The Government suggests that review by an Article III court is the appropriate forum for litigation of any TJAG decision respecting the release of documents.

### III.  Jurisdiction

> Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.  It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted); see generally Henry M. Hart Jr., The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L. Rev. 1362 (1953) (for the classical treatment of the subject).  "The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94–95 (1998) (citing Mansfield, Coldwater & Lake Mich. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884)).  "On every writ of error or appeal, the first and fundamental question is that of jurisdiction . . . . This question the court is bound to ask and answer for itself, even when not otherwise suggested . . . ."  Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453 (1900).

5

Center for Constitutional Rights et al. v. United States,
No. 12-8027/AR

In particular, this Court, and courts-martial in general, being creatures of Congress created under the Article I power to regulate the armed forces, must exercise their jurisdiction in strict compliance with authorizing statutes.  As the Supreme Court held in Clinton v. Goldsmith:

> When Congress exercised its power to govern and regulate the Armed Forces by establishing the CAAF, see U.S. Const. Art. I, § 8, cl. 14; 10 U.S.C. § 941; see generally Weiss v. United States, 510 U.S. 163, 166-169 (1994), it confined the court's jurisdiction to the review of specified sentences imposed by courts-martial:  the CAAF has the power to act "only with respect to the findings and sentence as approved by the [court-martial's] convening authority and as affirmed or set aside as incorrect in law by the Court of Criminal Appeals."  10 U.S.C. § 867(c).

526 U.S. 529, 533-34 (1999); see also United States v. Padilla, 1 C.M.A. 603, 606, 5 C.M.R. 31, 34 (1952) (noting that courts-martial are "tribunals of special and limited jurisdiction" and "must be convened strictly in accordance with statutory requirements").  Although Congress has authorized the CCAs a somewhat broader scope of review, it has similarly limited their jurisdiction.  See Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006).

This Court is empowered to issue extraordinary writs under the All Writs Act.  Goldsmith, 526 U.S. at 534 (citing Noyd v. Bond, 395 U.S. 683, 695 n.7 (1969)).  That act provides that: "[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective

6

jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2006). "[T]he express terms of the Act confine the power of the CAAF to issuing process 'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction." Goldsmith, 526 U.S. at 534-35; see United States v. Denedo, 556 U.S. 904, 911 (2009) ("As the text of the All Writs Act recognizes, a court's power to issue any form of relief -- extraordinary or otherwise -- is contingent on that court's subject-matter jurisdiction over the case or controversy."). As the Supreme Court noted, this Court "is not given authority, by the All Writs Act or otherwise, to oversee all matters arguably related to military justice." Goldsmith, 526 U.S. at 536. We recognized long ago that the "Act does not increase the areas of this Court's jurisdiction beyond the limitations set out in [Article 67], UCMJ." Hendrix v. Warden, 23 C.M.A. 227, 228, 49 C.M.R. 146, 147 (1974).

Article 67(c), UCMJ, 10 U.S.C. § 867(c) (2006), our jurisdictional statute, states:

> In any case reviewed by it, the Court of Appeals for the Armed Forces may act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the Court of Criminal Appeals.

It is vital to note what we are faced with here. This is not a case like United States v. Lopez de Victoria, where the question was the interpretation of our Article 67 jurisdiction

7

within an existing (Article 62) statutory framework.  66 M.J. 67
(C.A.A.F. 2008).  This case is not like Denedo v. United States,
where the question was the availability of the writ of error
coram nobis in cases other than those in which fundamental
jurisdictional objections were asserted.  66 M.J. 114 (C.A.A.F.
2008), aff'd., 556 U.S. 904 (2009).  Nor is it like Hasan v.
Gross, where the harm alleged by the appellant -- that the
military judge was biased -- had the potential to directly
affect the findings and sentence.  71 M.J. 416 (C.A.A.F. 2012).

Finally, this case differs in a very important respect from
Powell, 47 M.J. 363.  In that case, which dealt with the closure
of an Article 32 investigation to the press and the public, the
accused joined in the proceedings in order to vindicate his
right to a public trial.  Id.  Here, the accused has steadfastly
refused to join in the litigation, or, despite the Court's
invitation, to file a brief on the questions presented.  We thus
are asked to adjudicate what amounts to a civil action,
maintained by persons who are strangers to the court-martial,
asking for relief -- expedited access to certain documents --
that has no bearing on any findings and sentence that may
eventually be adjudged by the court-martial.

Appellants assert that (1) the trial court "had
jurisdiction to consider -- and did consider -- [Appellants']
claims"; (2) the CCA had potential jurisdiction to issue

8

extraordinary relief because PFC Manning could receive a sentence that would invoke the CCA's appellate jurisdiction; and (3) this Court has potential jurisdiction under Article 67 to review the CCA's judgment. Appellants premise their potential jurisdiction argument on Dean Foods Co., 384 U.S. at 603–04, an antitrust case in which the Supreme Court held that the Federal Trade Commission had implied authority under the All Writs Act to seek injunctive relief in a federal court of appeals. In that case, however, the Supreme Court confined the doctrine of potential jurisdiction to cases "within the appellate jurisdiction of the higher court" and "cases which are within its appellate jurisdiction although no appeal has been perfected." Id. at 603. Ultimately, then, any potential jurisdiction we may have in this case must turn on the extent of our own statutory jurisdiction, which is to be found in Article 67, UCMJ, as interpreted by the Supreme Court.

Appellants suggest that this case does not differ significantly from our decision in Powell, and that Congress has done nothing in the intervening years to preclude the relief they are requesting. But (1) Powell was decided before Goldsmith clarified our understanding of the limits of our authority under the All Writs Act, and (2) we assumed jurisdiction in that case without considering the question. More immediately, the accused in Powell joined the media as a

9

party in seeking a writ of mandamus to vindicate his

constitutional right to a public trial -- something which had

immediate relevance to the potential findings and sentence of

his court-martial.  We are not foreclosing the accused from

testing the scope of public access, but he has not done so here.

On these facts, we hold that Appellants failed to meet

their burden of establishing that this Court or the CCA has

jurisdiction to grant Appellants the relief they seek.

### IV.  Judgment

Appellants' writ-appeal is dismissed.

<u>Center for Constitutional Rights et al. v. United States</u>,
No. 12-0827/AR

BAKER, Chief Judge, with whom COX, Senior Judge, joins
(dissenting):

The general public has a qualified constitutional right of
access to criminal trials.  <u>Richmond Newspapers, Inc. v.
Virginia</u>, 448 U.S. 555 (1980) (plurality opinion).  Public
access to a criminal trial includes appropriate access to
filings.  <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597
(1978).  "Congress intended that, to the extent 'practicable,'
trial by court-martial should resemble a criminal trial in a
federal district court."  <u>United States v. Valigura</u>, 54 M.J.
187, 191 (C.A.A.F. 2000).  The right to a public trial is
embedded in Rule for Courts-Martial (R.C.M.) 806, which provides
that "[e]xcept as otherwise provided in this rule, courts-
martial shall be open to the public."

However, what the scope of this right might be in general,
or in the context of this specific court-martial, remains
unknown, and will remain so.[1]  That is because this Court has
determined that a military judge's application of R.C.M. 806 to
an ongoing court-martial falls outside this Court's jurisdiction

---

[1] The analysis to R.C.M. 806 recognizes as much, stating "[t]he
applicability of these [Supreme Court] cases to courts-martial
is not certain . . . . Nevertheless the rule and the discussion
are based on recognition of the value to the public of normally
having courts-martial open to the public.  That is particularly
true since the public includes members of the military
community."  <u>Manual for Courts-Martial, United States</u>, Analysis
of the Rules for Courts-Martial app. 21 at A21-48 (2012 ed.).

to review. As this Court and the Army Court have previously concluded, "public confidence in matters of military justice would quickly erode if courts-martial were arbitrarily closed to the public." United States v. Scott, 48 M.J. 663, 665 (A. Ct. Crim. App. 1998) (quoting United States v. Travers, 25 M.J. 61, 62 (C.M.A. 1987)). As a result, I respectfully dissent.

There are two threshold issues in this case. First, does the Court have jurisdiction to hear this extraordinary writ petition? Second, does a nonparty to the court-martial have standing to assert a right to public access to this court-martial in a context where the accused has not asserted such a right himself?

It is well settled that the media have standing to complain if access to courts has been denied or unconstitutionally restricted. Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 7 (1986) ("The right to an open public trial is a shared right of the accused and the public, the common concern being the assurance of fairness."); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603 (1982); ABC, Inc. v. Powell, 47 M.J. 363, 365 (C.A.A.F. 1997) ("[W]hen an accused is entitled to a public hearing, the press enjoys the same right and has standing to complain if access is denied."); see also Washington Post v. Robinson, 935 F.2d 282, 288-290 (D.C. Cir. 1991) (holding that the press and the public should have notice of closure to have

an opportunity to raise a First Amendment right of access claim).

On the jurisdictional question, the majority relies on Clinton v. Goldsmith, 526 U.S. 529 (1999), which is distinguishable from Appellants' case. While Goldsmith provides the current state of the law regarding this Court's ability to issue writs under the All Writs Act, neither the facts of Goldsmith nor the jurisdictional proscriptions contained therein apply to Appellants' case. Goldsmith concerned an administrative matter that was completely unreviewable by this Court. Id. at 535. In contrast, the writ before this Court appeals a specific ruling of a specific Rule for Courts-Martial in a specific and ongoing court-martial. The issue does not address the application of the Freedom of Information Act, a clear collateral matter entrusted to other courts, but a military judge's application of R.C.M. 806 to a specific court-martial. Appellate review of military judges' rulings in courts-martial is at the core of this Court's jurisdiction. That is what we do.

Furthermore, what Goldsmith proscribes does not apply here. Goldsmith bars this Court from exercising "continuing jurisdiction" over a previously resolved matter or from intervening with the "independent action" of a separate military agency or the executive branch. 526 U.S. at 536. In the

current case, the court-martial underlying this writ-appeal has not been resolved, nor would exercising jurisdiction here constitute intervening with the "independent action" of a separate military agency or the executive branch.

In solely isolating the text of Article 67, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867 (2006), the majority misses the greater whole. Congress established a three-tier military justice system with adoption of the Uniform Code of Military Justice, and four tiers when Supreme Court review was added in 1984, when the Military Justice Act of 1983 took effect. Military Justice Act of 1983, Pub. L. No. 98-209, § 10, 97 Stat. 1393, 1405-06 (1983) (codified as amended at 28 U.S.C. § 1259 and 10 U.S.C. § 867a). Congress did not intend for military judges to operate without review when applying the Rules for Courts-Martial or the Military Rules of Evidence. Neither did Congress intend that review to come in the form of collateral appeal to Article III courts in the context of ongoing courts-martial. That would not provide for a uniform application of the law between services and between courts-martial. It would also be unworkable.

The point is illustrated with respect to the application of R.C.M. 806, the rule at issue in this case. It states:

> (a) In general. Except as otherwise provided in this rule, courts-martial shall be open to the public. For

4

purposes of this rule, "public" includes members of both
the military and civilian communities.

Public access includes appropriate access to court records and
filings. In Nixon v. Warner Communications, for example, the
Court stated: "[i]t is clear that the courts of this country
recognize a general right to inspect and copy public records and
documents, including judicial records and documents." 435 U.S.
at 597 (footnote omitted). As the Third Circuit stated in
United States v. Antar, "[i]t would be an odd result indeed were
we to declare that our courtrooms must be open, but that
transcripts of the proceedings occurring there may be closed,
for what exists of the right of access if it extends only to
those who can squeeze through the door?" 38 F.3d 1348, 1360 (3d
Cir. 1994). However, the right to judicial records is not
absolute. As the Supreme Court noted, "[e]very court has
supervisory power over its own records and files, and access has
been denied where court files might have become a vehicle for
improper uses." Nixon, 435 U.S. at 598.

As detailed above, this Court, like other courts, has
determined that members of the public have standing to assert
the right to public access. The question, then, is one of
appellate jurisdiction to review a military judge's application
of R.C.M. 806, or, perhaps, the failure to apply R.C.M. 806.
Under the majority's reading of the UCMJ, R.C.M. 806 rulings

5

regarding public access to courts-martial are unreviewable by those courts established by Congress to adjudicate military justice appeals because public access issues are raised before the findings and sentence are approved by the convening authority. Of course public access issues would arise before the findings and sentence are approved; a public trial necessarily occurs before findings and sentencing.

Moreover, though the majority claims otherwise, today's opinion bars this Court from exercising jurisdiction in an appeal arising from an accused's assertion of his R.C.M. 806 right to a public trial. That is because the majority's view of jurisdiction hinges entirely on the words in Article 67, UCMJ: "[t]he Court of Appeals for the Armed Forces may act only with respect to the findings and sentence as approved by the convening authority."

The majority's interpretation leaves collateral appeal to Article III courts as the sole mechanism to vindicate the right to a public trial found in R.C.M. 806 beyond the initial good judgment of the military judge. This is unworkable and cannot reflect congressional design or presidential intent. Among other things, such a reading would result in the uneven application of the law depending, as it would, on the fortuity of the geographic locale where a court-martial is convened. In the case of overseas courts-martial it is not clear how this

would work at all.  Military judges would presumably apply, or
not apply, R.C.M. 806 without appellate review, for it is not
clear which Article III courts, if any, would have jurisdiction
to address collateral R.C.M. 806 appeals arising overseas.

A system dependent on Article III courts' review of R.C.M.
806 appeals by either the media or an accused will yield three
other untenable consequences.

First, the military judge will be compelled to conduct a
trial with the prospect that an unknown collateral court, rather
than the trial judge herself, will determine who has access to
the trial -- as well as when and whether any documents,
including evidence, are disclosed to the parties or to the
public, as part of what it means to have a public trial.  As
Senior Judge Cox ably argues, based on the law and his
experience as a trial judge, a trial judge must have the
authority to control her own courtroom.  The majority's
interpretation usurps that authority by creating a system
dependent on collateral review.

Second, in the event of conviction, a collateral court's
ruling regarding the application of R.C.M. 806 will be subject
to review by military appeals courts and this Court should an
accused allege that a violation of his right to a public trial
impacted his right to a fair trial, the findings in his case, or
the sentence.

Third, and most likely, collateral courts might exercise comity and wisely avoid the prospect of interfering in an ongoing court-martial without knowing all the facts and circumstances within that court-martial.  This, however, would leave the public and the accused without a mechanism to vindicate or test the scope of public access provided by R.C.M. 806 until after the trial because, under the majority's view, only then would military appellate courts and this Court have jurisdiction to review issues of public access.  This defeats the purpose of the rule.

This array of absurd consequences is most assuredly not what Congress intended when it established a uniform system of military justice.  And it is most assuredly not what the President intended when he promulgated R.C.M. 806, pursuant to his Article 36, UCMJ, 10 U.S.C. § 836 (2006), authority.

> [J]urisdiction is conferred ultimately by the Constitution, and immediately by statute.  However, this principle does not mean that our jurisdiction is to be determined by teasing out a particular provision of a statute and reading it apart from the whole.  Since the beginning of jurisprudence under the UCMJ, we have read the statutes governing our jurisdiction as an integrated whole, with the purpose of carrying out the intent of Congress in enacting them.

United States v. Lopez de Victoria, 66 M.J. 67, 69 (C.A.A.F. 2008).  That is, until today.  As a result, I respectfully dissent as well as join Senior Judge Cox's analysis regarding the role of the military judge.

8

COX, Senior Judge, with whom BAKER, Chief Judge, joins
(dissenting):

I agree with the well-reasoned opinion of Chief Judge
Baker.  I write separately because I believe without reservation
that a military judge has the jurisdiction, indeed the
responsibility, to insure that a military court-martial is
conducted so that the military accused and the public enjoy the
same rights to a fair and public hearing as is envisioned in the
Bill of Rights and embodied in the Rules for Courts-Martial
(R.C.M.). I also believe without reservation that the United
States Court of Appeals for the Armed Forces has the
jurisdiction, indeed the responsibility, to insure that military
judges faithfully perform their duties in accordance with law.[1]

In denying standing to Appellants the majority incorrectly
distinguishes this case from the legion of cases giving standing
to the media in cases such as this one.  Globe Newspaper Co. v.
Superior Court, 457 U.S. 596, 603-05 (1982); ABC, Inc. v.
Powell, 47 M.J. 363, 365 (C.A.A.F. 1997) ("[W]hen an accused is
entitled to a public hearing, the press enjoys the same right
and has standing to complain if access is denied."); see also

---

[1] This case would have been an appropriate matter for the Judge
Advocates General to have filed an amicus brief.  It is bizarre
that the services would advocate that an Article III court
review the conduct of a military judge in the midst of a court-
martial.  It would be interesting to learn if that were indeed
their view.

Washington Post v. Robinson, 935 F.2d 282, 292 (D.C. Cir. 1991)
(holding that the press and the public should have notice of
closure to have an opportunity to raise a First Amendment right
of access claim).

Clinton v. Goldsmith, 526 U.S. 529 (1999), while providing
the current state of the law regarding this Court's ability to
issue writs under the All Writs Act, concerned an administrative
matter that was found by the Supreme Court to be unreviewable by
this Court.  In contrast, this is an ongoing court-martial and,
as so well noted by the opinion of Chief Judge Baker, is clearly
within the four-tiered court system created by Congress by the
Uniform Code of Military Justice (UCMJ).

This case is about the "office" of military judge.  United
States v. Weiss, 36 M.J. 224 (C.M.A. 1992); John S. Cooke, The
United States Court of Military Appeals, 1975-1977:
Judicializing the Military Justice System, 76 Mil. L. Rev. 43
(1977).  Therefore, in my judgment, this case is about the
authority of a military judge to manage her courtroom and to
supervise the preservation of evidence, create an accurate
record of trial, and control the ebb and flow of spectators and
members of the press into the courtroom.  This case is about
process, not the constitutional rights of Appellants.  The
military judge's confusion as to what authority she possesses

over trial documents is evident from the record.[2]  In the same

Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2006), session, the

military judge approved the publication of defense motions,

pursuant to an agreement with the Government, on a defense

website, yet then stated she does not possess the authority to

authorize release of court documents in response to Appellants'

original request before the court, a request which included

documents filed with the court such as defense motions.

To me the fundamental questions are what is the role of the

military judge in the conduct of a court-martial and are her

actions reviewable by the appellate courts.  We are remiss,

therefore, in not taking this opportunity to clarify what

authority the military judge has regarding the control of the

court-martial process, including documents, evidence, and

transcripts produced during the trial.

"Military judges perform duties prescribed by statute and

the executive order when detailed to a specific court-martial."

Weiss, 36 M.J. at 228.  When the position of the military judge

was created, the intention was that the military judge would

preside over a court-martial in the same manner as a federal

district judge, with "roughly equivalent powers and functions."

---

[2] Interestingly the most scholarly work done on the issues
presented in this case was done by the presiding military judge,
Colonel Denise Lind.  See Denise Lind, Media Rights of Access to
Proceedings, Information, and Participants in Military Criminal
Cases, 163 Mil. L. Rev. 1 (2000).

Sam J. Ervin Jr.,[3] The Military Justice Act of 1968, 45 Mil. L. Rev. 77, 89 (1969); see also United States v. Graf, 35 M.J. 450, 465 (C.M.A. 1992) ("In our view, the Uniform Code of Military Justice contemplates that a military judge be a real judge as commonly understood in the American legal tradition"); United States v. Valigura, 54 M.J. 187, 191 (C.A.A.F. 2000) (finding that Congress intended courts-martial to resemble a federal criminal trial, to the extent it was practicable).

Once a court-martial is convened, the military judge controls its proceedings, subject to the proscriptions in the R.C.M.  United States v. Stringer, 5 C.M.A. 122, 140, 17 C.M.R. 122, 140 (1954) (Latimer, J., concurring).  R.C.M. 801 sets forth the responsibilities of the military judge, including exercising "reasonable control over the proceedings to promote the purposes" of the R.C.M. and the Manual for Courts-Martial, United States.  R.C.M. 801(a)(3).  R.C.M. 806 gives the military judge the responsibility to make sure the court-martial shall be open to the public.  The military judge has the authority to seal portions of the record during trial or prevent parties from divulging information that is not part the public record during trial.  R.C.M. 701(g)(2); R.C.M. 806(d).  R.C.M. 1104 gives

---

[3] Senator Ervin introduced and sponsored the bill that became the Military Justice Act of 1968.

responsibility to the military judge to authenticate a record of trial in certain cases.

The fact of the matter is there is no rule that states that the documents, filings, evidence, and record transcripts created during an ongoing court-martial do not fall under the authority given to the military judge to exercise control over the court-martial and ensure public access to the proceedings. If the plain language of R.C.M. 801 does not expressly provide the authority to control the documents created during the court-martial process, then surely the rule implies that every military judge has the authority to regulate the release of those documents. That rule read in conjunction with R.C.M. 806 is certainly broad enough to allow the military judge to grant the relief asked for by the Center for Constitutional Rights if it can be done reasonably and without disruption to the trial and the processes attendant thereto.

In my judgment, this Court possesses jurisdiction under the All Writs Act and under the common law of our Anglo-American jurisprudential heritage to aid the military judge in the performance of her duties. Certainly we are in a better position to do that than is a federal district judge to solve the issues presented. See generally Schlesinger v. Councilman, 420 U.S. 738, 758 (1975).

5

It is the responsibility of a military judge to fashion a remedy in these cases given the various conditions and circumstances as one might find at a particular court-martial. The military judge has the information and knowledge as to what logistical support a court-martial may have in an individual circumstance. Given that courts-martial over history have been convened in the field, onboard ships at sea, and in small posts, camps, and stations around the world, a military judge must have broad latitude to decide on how she should deal with requests for information such as we have before us.[4] However, we must make it clear that this Court does have jurisdiction and the ability to tell a military judge, "You have authority to release portions of the record of trial, briefs, other non-classified evidence, etc., under such circumstances and under such conditions as you find to be fair and reasonable and in compliance with R.C.M. 806 and the other applicable rules." Like other rulings of a military judge, our review would be to determine whether a military judge abused her discretion in a particular case.

Accordingly, I would reverse the Army Court of Criminal Appeals and remand the case to the military judge to carry out her responsibilities in this regard.

---

[4] We do not set any rules for making this happen. Rather, we only recognize that the military judge has the authority to deal with the issues presented.